**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ALPHA HOME HEALTH SOLUTIONS, LLC,

        Plaintiff,

v.

SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES and ADMINISTRATOR FOR THE CENTERS FOR MEDICARE AND MEDICAID SERVICES,

        Defendants.
_____/

Case No: 6:18-cv-1577-Orl-40TBS

## ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order (Doc. 4 ("**TRO Motion**")), filed September 25, 2018. The TRO Motion seeks to enjoin Defendants, Secretary of the U.S. Department of Health and Human Services and Administrator for the Centers for Medicare and Medicaid Services. (*Id.*). A billing dispute between the parties is currently on appeal to an administrative law judge ("**ALJ**") to determine whether Defendants overpaid Plaintiff for Medicare claims. Upon consideration of the TRO Motion, supporting filings, and the applicable law, the Court finds that the motion is due to be denied.

## I. BACKGROUND

On September 24, 2018, Plaintiff, Alpha Home Health Solutions, LLC ("**Alpha**"), initiated this action with the filing of the Verified Complaint for Temporary Restraining Order and Preliminary Injunction and/or for Mandamus Relief. (Doc. 1 (the

"**Complaint**")).[1] The next day, it filed the TRO Motion, which seeks a temporary restraining order enjoining Defendants from recouping amounts allegedly owed by Plaintiff and ordering Defendants to reimburse Plaintiff for Medicare claims arising during the pendency of Alpha's administrative appeal. (Doc. 4, pp. 16–17).

Alpha is a home healthcare service provider with about twenty employees. (Doc. 1, ¶ 5). Alpha provides medical services to approximately thirty-five patients in their homes, at assisted living facilities, and in retirement communities. (*Id.*).

Claims for Medicare payments for home healthcare must be approved by the Department of Health and Human Services ("**DHS**"), which processes them through Centers for Medicare and Medicaid Services ("**CMS**") and its Medicare Administrative Contractors ("**MACs**"). (*Id.* at ¶ 8). "MACs are government contractors that process and make payments on valid claims pursuant to 42 U.S.C. § 1395kk-1(a)(3)." (*Id.*). Alpha submits reimbursement claims to the MAC appointed to the Orlando, Florida, geographic area—Palmetto GBA, LLC ("**Palmetto**"). (*Id.* at ¶ 49).

Paid Medicare claims are subject to "post-payment review" by Zone Program Integrity Contractors ("**ZPICs**"). (*Id.* at ¶¶ 9–10). On December 27, 2016, SafeGuard Services, LLC ("**SGS**")—the ZPIC assigned to its geographic area—sent Alpha a letter stating that Defendants overpaid Alpha approximately $1,418,503.47 in Medicare claims. (*Id.* at pp. 8, 12–13). This overpayment amount was calculated based on SGS's review of a sample of sixty-nine claims paid to Alpha by Medicare. (*Id.*). The overpayment findings from the sample were then extrapolated to determine the total Medicare

---

[1] The Complaint names as Defendants the Secretary of the U.S. Department of Health and Human Services and the Administrator for the Centers for Medicare and Medicaid Services. (*Id.* at p. 1).

overpayment. (*Id.*). On December 29, 2016, Palmetto requested that Alpha repay $1,418,503. (*Id.* at pp. 18–22).

Alpha immediately appealed to the MAC, which issued a redetermination decision on April 5, 2017, partially upholding the claim denials. (*Id.* at ¶ 9). Next, Alpha requested review by a Qualified Independent Contractor, C2C Innovative Solutions, Inc. ("**C2C**"), which ultimately rendered a partially favorable decision on August 14, 2017. (*Id.*). Subsequently, Alpha requested C2C reopen its reconsideration decision. (*Id.*). C2C agreed to reopen its reconsideration decision on October 27, 2017. (*Id.* at pp. 78–79).

On April 30, 2018, Alpha received a "partially favorable" reconsideration decision, resulting in a reduced overpayment amount of $707,981.33. (*Id.* at pp. 112, 114). As of July 27, 2018, $101,767.25 of interest had accrued, thus Alpha owes a total of $809,748.58. (*Id.*). Before filing this suit, Alpha took two responsive actions: (1) Alpha requested a hearing before an ALJ ("**ALJ Hearing**") to demonstrate it was not overpaid; and (2) Alpha applied for a five-year repayment plan.[2] (*Id.* ¶¶ 11–12, pp. 117–19). The repayment-plan application has not yet been resolved. (*Id.*).

Plaintiff submits that it would need to wait between three and five years for an ALJ hearing due to a current backlog of cases. (*Id.* at ¶ 12, p. 119; Docs. 1-2, through 1-5). This substantial wait time violates the Social Security Act, § 1869(d)(1)(A), which requires an ALJ hearing and determination within ninety days of the day the request for hearing is filed. (Doc. 1-2). Alpha's Owner, Jennifer Tauro ("**Ms. Tauro**") maintains that Alpha cannot afford to pay the amounts it allegedly owes, either in lump sum or via a repayment

---

[2] The repayment plan would require Alpha to pay $17,055.73 monthly for five years. (*Id.* at ¶ 11).

plan. (Doc. 1-1, ¶ 11; Doc. 4). Enforcement of the alleged debt would "effectively bankrupt[]" Alpha, causing it to shut down, resulting in Alpha's employees losing their jobs and Alpha's patients losing their home healthcare provider. (Doc. 1-1, ¶ 12; Doc. 4, p. 1). Accordingly, Plaintiff seeks a temporary restraining order enjoining Defendants from enforcing the alleged debt. (Doc. 4).

II. STANDARD OF REVIEW

A district court may issue a TRO without notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). TROs are granted in only limited circumstances. "Such orders will be entered only in emergency cases to maintain the status quo until the requisite notice may be given and an opportunity is afforded to opposing parties to respond to the application for a preliminary injunction." Local Rule 4.05(a).

To obtain a TRO, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) irreparable injury "so imminent that notice and a hearing on the application for preliminary injunction is impractical if not impossible"; (3) that the balance of the equities favors the movant; and (4) that a TRO would not harm the public interest. Local Rule 4.05(a)(2)–(4). A TRO is an "extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to *each* of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998))

(emphasis added). Ultimately, issuing a temporary restraining order or a preliminary injunction should be "the exception rather than the rule." *Siegel*, 234 F.3d at 1176.

A.   **Irreparable Injury**

The TRO Motion fails to establish the irreparable injury component and is therefore due to be denied. With respect to irreparable injury, Plaintiff maintains that it will "will go out of business long before it has an opportunity to be heard by an impartial and unbiased ALJ, much less complete the rest of the administrative appeals process to which it is statutorily entitled to participate." (Doc. 4, p. 11). Ms. Tauro contends that Alpha "cannot survive if CMS begins to recoup 100% of its Medicare payments," and that even monthly payments according to the payment plan would "effectively bankrupt" Alpha. (Doc. 1-1, ¶¶ 11, 12). As a result, Alpha would have to close, to the detriment of its employees and patients. (*Id.* at ¶¶ 14–15).

"A showing of irreparable injury is the 'sine qua non of injunctive relief.'" *Siegel*, 234 F.3d at 1176 (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). The showing of irreparable injury "must be neither remote nor speculative, but actual and imminent." *Id.*

As a preliminary matter, the Court finds that the potential injuries inflicted to Alpha's employees and patients are not considered under the irreparable injury prong. Those injuries are properly considered under the public interest factor. *See Mama's Enters. v. United States*, 883 F. Supp. 2d 1128, 1137 (N.D. Ala. 2012).

As to irreparable injury, Plaintiff's averments that it will be forced to close absent a TRO are too speculative to satisfy this factor. Plaintiff has only offered evidence that it would be forced to close (1) immediately if the alleged $800,000-plus obligation was

5

enforced; or, alternatively (2) before the years-away ALJ Hearing occurs if Alpha's payment-plan application was granted. Plaintiff has not demonstrated that it will be forced to close "imminent[ly]" absent a TRO or that "a hearing on the application for preliminary injunction is impractical if not impossible." *Siegel*, 234 F.3d at 1176; Local Rule 4.05(a)(2). Instead, Plaintiff contends it will be forced to close only after its payment plan application is rejected and the obligation enforced, or after the payment plan is accepted at some undetermined point in the future. Plaintiff has thus not shown that an *ex parte* TRO should issue at this time.

This conclusion is undisturbed by Plaintiff's citation to *Family Rehab., Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, No. 3:17-cv-3008-K, Doc. 35 (N.D. Tex. June 4, 2018) (mem. op.). In that case, the TRO applicant was facing a potential $7.5 million repayment obligation and, more importantly, had already laid off most of its employees due to the financial impact of the defendants' recoupment efforts. *Family Rehab.*, Doc. 35, pp. 3, 6–7. Conversely, Alpha has not shown that it has been forced to lay off employees or faced similar immediate financial impacts. The other case Alpha attaches to its TRO Motion, *Accident, Injury & Rehab., PC v. Sec'y of U.S. Dep't of Health & Human Servs.*, No. 4:18-cv-2173-DDC, Doc. 20 (D.S.C. Aug. 21, 2018), is inapposite for the same reason. *See id.* at 10 (finding irreparable injury prong met where the movant had lost $6,000,000, had been "forced to terminate twenty-four employees," and was facing imminent bankruptcy). And while the Court agrees that in this context, "going out of

business can be sufficient evidence of irreparable injury,"[3] Plaintiff has failed to establish the purported threat is imminent enough to warrant an *ex parte* TRO.

## III. CONCLUSIONS

Accordingly, Plaintiff's Motion for Temporary Restraining Order (Doc. 4) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on September 27, 2018.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[3] *MaxMed Healthcare, Inc. v. Burwell*, No. SA:14-CV-988-DAE, 2015 WL 1310567, at *3 (W.D. Tex. Mar. 23, 2015).