UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALPHA HOME HEALTH SOLUTIONS, LLC,

    Plaintiff,

v.              Case No: 6:18-cv-1577-Orl-40TBS

SECRETARY OF THE UNITED
STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES and
ADMINISTRATOR FOR THE
CENTERS FOR MEDICARE AND
MEDICAID SERVICES,

    Defendants.
_____/

## ORDER

This cause is before the Court on Plaintiff Alpha Home Health Solutions, LLC's (hereafter "Alpha") Renewed Motion for Preliminary Injunction, (Doc. 12), and Defendants' Response in Opposition.[1] (Doc. 21). Upon due consideration of the pleadings, and with the benefit of oral argument, Plaintiff's motion is denied.

**I. BACKGROUND**

Alpha is a home healthcare service provider with about twenty employees. (Doc. 1, ¶ 5). Alpha provides skilled nursing care, restorative therapy, and other medical services to approximately thirty-five patients in their homes, at assisted living facilities, and in retirement communities. (*Id.*; Doc. 12, p. 1). Alpha currently employs approximately twenty people as either W-2 employees or independent contractors. (Doc. 1 at ¶ 14).

---

[1] This action commenced with Plaintiff's Motion for Temporary Restraining Order, (Doc. 1), which the Court denied. (Doc. 5).

Alpha is one of few agencies that provide specialized therapy services, including dementia management, lymphedema therapy, and vestibular rehabilitation. (Doc. 12-1, ¶ 5).

Ms. Jennifer Tauro, owner and manager of Alpha, provided an affidavit in which she attests that approximately 90% of Alpha's revenue is received through Medicare reimbursement. (Doc. 1-1, ¶¶ 4–5). Alpha bills Medicare approximately $45,00.00 per month. (*Id.* at ¶ 7). On December 27, 2016, a government-contracted auditor initially estimated that Alpha had been overpaid $1,418,504.47. (*Id.* at ¶ 8). Alpha pursued its available administrative remedies, discussed in detail below, and on April 30, 2018 received a partially favorable decision which reduced the overpayment by half. (*Id.* at ¶¶ 9-10). Alpha made a timely demand for a hearing before an administrative law judge ("ALJ") to further contest the overpayment calculation. (*Id.* at pp. 117–19). By statute, a hearing must be held promptly before an ALJ, but the current backlog of pending cases has created a waiting period of between three and five years.[2] (Doc. 12-1, ¶ 14).

To continue operating the business and providing services to patients, Ms. Tauro stopped drawing a salary and is using her personal resources to cover expenses. (Doc. 12-1, ¶ 15). Alpha has already been forced to reduce medical staff, from thirty full-time to four full-time equivalent employees and has reduced its patient list from 130 to 22 patients.[3] (*Id.* at ¶ 16). Alpha has been compelled to lay off its remaining full-time

---

[2] The Government conceded at oral argument that the backlog of cases will require Alpha and similarly situated Medicare payees to wait years before their ALJ hearing. Additionally, the processing time for a typical appeal is 1,217 days. (Doc. 1-3, p. 3).

[3] The reduction in staff and patients is the result of recoupment via withholding of payments by the Defendants.

2

marketers, further impacting the viability of its business. (*Id.*). Alpha now seeks entry of a preliminary injunction to stay recoupment by the Defendants of $707,981.33 plus interest accruing at 9.625% per annum (currently exceeding $100,000). (Doc. 12, p. 1).

### A. The Administrative Appeals Process

Under the Medicare program enacted in 1965 under Title XVIII of the Social Security Act, the Medicare program reimburses Medicare providers for covered claims. 42 U.S.C. § 1395 *et seq.* Medicare claims for home healthcare services must be approved by the Department of Health and Human Services ("DHS"), which processes them through Centers for Medicare and Medicaid Services ("CMS") and its Medicare Administrative Contractors ("MACs"). (Doc. 1, ¶ 8). "MACs are government contractors that process and make payments on valid claims pursuant to 42 U.S.C. § 1395kk-1(a)(3)." (*Id.*). Alpha submits reimbursement claims to the MAC appointed to the Orlando, Florida, geographic area—Palmetto GBA, LLC ("Palmetto"). (*Id.* at ¶ 49).

Paid Medicare claims are subject to "post-payment review" by Zone Program Integrity Contractors ("ZPICs"). (*Id.* at ¶¶ 9–10). ZPICs generally use statistical sampling to calculate an estimated amount of overpayment. A healthcare agency can appeal post-payment claim denials via a four-level administrative appeals process before seeking review in front of a U.S. District Judge. *See* 42 U.S.C. § 1395ff. The four-step process proceeds as follows: first, a MAC reviews the denied claim for redetermination and must issue its decision within sixty days of the review request. *Id.* at § 1394ff(a)(3). Second, the health care agency can appeal the MAC's redetermination to a Qualified Independent Contractor ("QIC") within 180 days of the redetermination decision. *Id.* at § 1395ff(c). The QIC must issue its decision within sixty days of the reconsideration request. *Id.*

Following the first two review steps, the third avenue is to appeal the QIC reconsideration decision within sixty days of its receipt by requesting a hearing before an ALJ. *Id.* at § 1395ff(d)(1)(A). The statute requires the ALJ to hold the hearing and render a decision within ninety days of the healthcare provider's hearing request. *Id.* If an ALJ does not hold the hearing and render a decision in a timely manner, the healthcare provider may escalate its appeal to a fourth level of review before the Medical Appeals Council, but the provider is limited to the evidentiary record established in the prior levels of review. *Id.* at § 1395ff(d)(3)(A). The Appeals Council must render a decision or remand the case within ninety days of a timely review request. *Id.* at § 1395ff(d)(2)(A).

If these time periods are complied with, the appeals will proceed through the administrative process in about one year. After the Council has issued its decision, the healthcare provider may seek review in federal court. During the first two levels of review, healthcare providers can avoid recoupment of alleged overpayments by pursuing an appeal. *Id.* at § 1395ddd(f)(2). The provider cannot, however, avoid recoupment during the third or fourth level of the review process. *Id.* Accordingly, CMS can recoup the alleged overpayments prior to *de novo* review before the ALJ. *Id.*

### B. Alpha's Appeals

As previously discussed, on December 27, 2016, SafeGuard Services, LLC ("SGS")—the ZPIC assigned to Alpha's geographic area—sent Alpha a letter stating that Defendants overpaid Alpha approximately $1,418,503.47 in Medicare claims. (Doc. 1, pp. 8, 12–13). This overpayment amount was calculated based on SGS's review of a sample of sixty-nine claims paid to Alpha by Medicare. (*Id.*). The overpayment findings from the

sample were then extrapolated to determine the total Medicare overpayment. (*Id.*). On December 29, 2016, Palmetto requested that Alpha repay $1,418,503. (*Id.* at pp. 18–22).

Alpha immediately appealed to the MAC, which issued a redetermination decision on April 5, 2017, partially upholding the claim denials. (*Id.* at ¶ 9). Next, Alpha requested review by a Qualified Independent Contractor, C2C Innovative Solutions, Inc. ("C2C"), which ultimately rendered a partially favorable decision on August 14, 2017. (*Id.*). Subsequently, Alpha requested that C2C reopen its reconsideration decision. (*Id.*). C2C agreed to reopen its reconsideration decision on October 27, 2017. (*Id.* at pp. 78–79).

On April 30, 2018, Alpha received a "partially favorable" reconsideration decision, resulting in a reduced overpayment amount of $707,981.33. (*Id.* at pp. 112, 114). As of July 27, 2018, $101,767.25 of interest had accrued, thus Alpha owes a total of $809,748.58. (*Id.*). Before filing this suit, Alpha took two responsive actions: (1) Alpha requested a hearing before an ALJ ("ALJ Hearing") to demonstrate it was not overpaid; and (2) Alpha applied for a five-year repayment plan.[4] (*Id.* ¶¶ 11–12, pp. 117–19). The repayment-plan application was approved shortly before oral argument on November 13, 2018; however, Alpha cannot afford the payments sought by CMS over the next sixty months while it awaits a hearing before an ALJ and potentially an appeal from that decision.[5] (Doc. 12-1, ¶¶ 10-11).

---

[4] The repayment plan would require Alpha to pay $17,055.73 monthly for five years. (*Id.* at ¶ 11).

[5] The repayment schedule (Doc. 21-1) provides for $21,819.55 per month over the first 6 months–or 50% of Alpha's income–followed by monthly payments of $16,206.09 for the next 54 months.

5

## II. ISSUES

A. Whether this Court lacks jurisdiction to decide Plaintiff's motion when Plaintiff has not exhausted all administrative remedies and where Plaintiff's challenge is limited to procedural due process?

B. Whether Plaintiff has a property interest in Medicare payments that are subject to possible recoupment for overpayment for purposes of asserting a procedural due process challenge?

C. Assuming subject matter jurisdiction is present, and a constitutionally-protected property interest exists, whether Plaintiff is entitled to a preliminary injunction.

## III. Subject Matter Jurisdiction

### A. Exhaustion of Administrative Remedies

Federal courts are courts of limited jurisdiction, and they are restricted to hearing only those types of cases enumerated by Article III of the U.S. Constitution or otherwise granted to them by Congress. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). The party seeking a federal court's jurisdiction has the burden of establishing the basis for jurisdiction. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011). The issue before this Court is whether § 405(h), incorporated by reference in the Medicare Act, precludes jurisdiction to entertain constitutional challenges to the Medicare Act, including those collateral to the reimbursement and recoupment process.

"Judicial review of reimbursement determinations [made by HHS] is limited by the Medicare Act." *V.N.A. of Greater Tift Cty., Inc. v. Heckler*, 711 F.2d 1020, 1024 (11th Cir.

1983). The Medicare Act, 42 U.S.C. § 1395ii, incorporates 42 U.S.C. § 405(h) found in the Social Security Act, which provides, in pertinent part:

> No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 [general federal question] or 1346 [United States as defendant] of title 28 to recover on any claim arising under this chapter.

*Id.* "It is agreed by all of the circuits that the central target of the section 405(h) preclusion is 'any action envisioning recovery on any claim emanating from' the Medicare Act." *Heckler*, 711 F.2d at 1025 (citation omitted). Accordingly, "any suit 'seeking eventual realization of provider-cost reimbursement under the Medicare Act' is 'intercept[ed]' by section 405(h)." *Id.*

The Fifth Circuit in *Dr. John T. MacDonald Foundation, Inc. v. Califano*, 571 F2d 328, 331 (5th Cir. 1978),[6] confronted the issue of whether § 405(h) precludes not only review of an agency's findings of fact and law, but also a federal court's jurisdiction to entertain constitutional claims. The court in *Califano* addressed the split among several Circuits; the Eight Circuit had held that "although § 405(h) precludes review of agency findings of fact and law, § 405(h) does not preclude jurisdiction to entertain constitutional claims." *citing St. Luis University v. Blue Cross Hospital Service*, 537 F.2d 283 (8th Cir. 1976), *cert. denied*, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1977). *Id.* The Second and Seventh Circuits, however, take the opposite view and have held that "all claims arising under the Medicare Act, including constitutional claims" are precluded § 405(h).

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

7

*S. Windsor Convalescent Home, Inc. v. Mathews*, 541 F.2d 910 (2d Cir. 1976); *Trinity Mem'l Hosp. of Cudahy, Inc. v. Associated Hosp. Servs.*, 570 F.2d 660 (7th Cir. 1977). The Second and Seventh Circuits also found the Court of Claims has jurisdiction over constitutional challenges arising under the Medicare Act. *Id.*

The court in *Califano,* next discussed the impact of *Weinberger v. Salfi*, 442 U.S. 749, 763–64 (1975), on the jurisdiction analysis. In *Salfi,* the Supreme Court held that subject matter jurisdiction for judicial review pursuant to § 405(g)—which specifies the requirements for judicial review of a benefits determination under the Social Security Act—requires a final decision of the Secretary made after a hearing. *Id.* The Court characterized a "final decision" as "central to the requisite grant of subject-matter jurisdiction. *Salfi*, 442 U.S. at 764.[7] The Fifth Circuit notes, however, that *Salfi* does not foreclose jurisdiction over constitutional claims arising under § 405(h) as applied to the Medicare Act. *Califano*, 571 F.2d at 332. This is because the Court in *Salfi* was construing § 405(g), and that statute provides review of constitutional claims arising under the Social Security Act. *Id.* The Supreme Court recognized in *Salfi*, albeit in dictum, that "a statute precluding all review of constitutional claims would raise a serious constitutional question of the validity of the statute." *Id.* Ultimately, the Fifth Circuit transferred the case to the Court of Claims and did not resolve whether Congress intended to preclude constitutional claims under § 405(h). *Id.*

---

[7] *Salfi* concerns class-action litigation, brought under 28 U.S.C. § 1331, challenging the constitutionality of the duration-of-relationship requirement for eligibility to receive Social Security benefits. *Salfi*, 422 U.S. at 755. The Supreme Court found the duration-of-relationship eligibility statute was a "claim arising under" § 405(h) even though it was also a claim arising under the Constitution. *See Heckler v. Ringer*, 466 U.S. 602, 613 (1984).

After *Salfi* and *Califano*, the Eleventh Circuit in *Heckler* decided whether the All Writs Act empowers a district court, notwithstanding § 405(h)'s preclusive language, to enjoin the Secretary's recoupment of an alleged overpayment pending final administrative review; that is, before exhausting all administrative remedies. *Heckler*, 771 F.2d at 1021. The Court concluded that the district court has the power to issue an injunction in "certain extraordinary circumstances." *Id.*

The plaintiff in *Heckler* challenged a decision by Blue Cross, a Medicare intermediary, that Plaintiff V.N.A. was effectively controlled by a related entity, resulting in an overpayment. *Id.* at 1023. The Court concluded that V.N.A.'s claims "are at the heart of the section 405(h) preclusion" in that it "directly seeks 'realization of provider-cost reimbursement under the Medicare Act.'" *Id.* at 1027. The Court acknowledged that "[t]he power to issue a stay is inherent in judicial power and . . . rests on the exercise of an informed discretion on a showing of irreparable injury to the applicant or to the public interest." *Id.* at 1028 (citation omitted). Ultimately, the Court found that a lengthy review of the merits of the reimbursement process is required before a proper exercise of the Court's power under the All Writs Act, and a fact-intensive analysis of the merits is inconsistent with preclusion envisioned by the Medicare Act. *Id.* at 1032.[8] While the Court denied issuing an injunction, the power to maintain the status quo was again acknowledged.

---

[8] The Court also found an injunction to be inappropriate because V.N.A. had not carried its burden of proving irreparable injury or likelihood of success on the merits. *Heckler*, 711 F.2d at 1034.

9

## B. The Collateral-Claim Exception

One year after the Supreme Court decided *Salfi*, the Court issued its opinion in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Like *Salfi*, the issue before the Court in *Eldridge* concerned the Social Security Act. *Id.* at 324. Respondent Eldridge challenged the constitutional validity of the administrative procedures established by the Secretary for assessing whether a continuing disability exists. *Id.* at 325. The claim was initially presented to the state agency as required, but Eldridge commenced his challenge in federal court before exhausting all administrative remedies. *Id.* Again, the threshold question was whether § 405(h) precluded federal-question jurisdiction. *Id.* at 326. The Secretary argued that Eldridge could not properly invoke § 405(g) as a basis for jurisdiction because the Secretary had not waived the finality requirement.[9] *Id.* at 328. The Court disagreed with the Secretary's position and identified waivable and non-waivable finality components, holding as follows:

> Implicit in *Salfi* however, is the principle that this condition [of finality] consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary.

*Id.*

---

[9] § 405(g) provides in part:

> Any individual, after any final decision of the Secretary made after a hearing to which he is a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

The Court explained that the Secretary may waive the exhaustion requirement at any stage of the administrative process by finding that no further review is warranted "either because the internal needs of the agency are fulfilled or because the relief that is sought is beyond his power to confer." *Id.* at 330. The Court reasoned that there are cases where a claimant's interest in having an issue resolved promptly is so great that deference to the agency's judgment is inappropriate. *Id.* In such circumstances, exhaustion is excused even absent affirmative waiver by the Secretary. *Id.* The Court in *Eldridge* found the Respondent's constitutional challenge to be "entirely collateral to his substantive claim of entitlement." *Id.* The Court concluded that Eldridge's claim to a pre-deprivation hearing as a matter of constitutional right rests upon a finding that full relief cannot be obtained at a post-deprivation hearing. *Id.* 331. Eldridge's physical condition and dependency upon disability benefits allowed the Court to conclude that an erroneous termination would damage him in a way not compensable through retroactive payments.[10] *Id.* After carefully considering the administrative procedures in place, the Court concluded that an evidentiary hearing is not required prior to the termination of disability benefits and found the administrative procedures fully compliant with due process.[11] *Id.* at 349.

---

[10] The Court held the interest of an individual in continued receipt of benefits is a statutorily-created "property" interest protected by the Fifth Amendment. *Eldridge*, 424 U.S. at 332. The Court recognized that "the possible length of wrongful deprivation of . . . benefits [also] is an important factor in assessing the impact of official action on the private interests." *Id.* at 341–42. The Court noted that the delay between actual cutoff of benefits and final decision after a hearing exceeded one year. *Id.* at 342.

[11] In *Heckler v. Ringer*, 466 U.S. at 604–05, respondents challenged the Secretary's policy concerning payment for a medical procedure. The Court held the challenge arises under the Medicare Act, since it must resolve the issue of coverage leaving only ministerial details prior to reimbursement. *Id.* at 616.

More recently the Fifth Circuit in *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496, 499 (5th Cir. 2018), addressed jurisdiction where the plaintiff, a home healthcare services provider, was ordered to repay $7,622,122.31. Family Rehab challenged the initial audit and the extrapolation methodology, exhausting the first two stages of the administrative appeals process. *Id.* at 500. Family Rehab timely requested an ALJ hearing. *Id.* Due to the backlog of cases, a hearing before an ALJ would be delayed at least 900 days. *Id.* Family Rehab filed suit in district court seeking an injunction to prevent the MAC from recouping the overpayments until its administrative appeal is concluded. *Id.* Since the delay would result in Family Rehab going out of business, they asserted procedural and substantive due process challenges. *Id.*

After acknowledging the preclusive effect of §§ 405(g) and (h), the court turned to the collateral-claim exception articulated in *Eldridge*, 424 U.S. at 330. Quoting *Eldridge*, the court found that "jurisdiction may lie over claims (a) that are 'entirely collateral' to a substantive agency decision and (b) for which 'full relief cannot be obtained at a postdeprivation hearing.'" *Family Rehab.*, 886 F.3d at 501 (quoting *Eldridge*, 424 U.S. at 330–32). "Thus, 'when a plaintiff asserts a collateral challenge that cannot be remedied after the exhaustion of administrative review,' courts shall deem exhaustion waived." *Id.*

A claim is collateral when it does not require the court to "'immerse itself' in the substance of the underlying Medicare claim or 'demand a factual determination' as to the application of the Medicare Act." *Id.* (citation omitted). The claim also may not request relief that would be the "substantive, permanent relief that the plaintiff seeks or should seek through the agency appeals process." *Id.* The claim must only seek some form of relief that is unavailable through the administrative process. *Id.* at 502. Put simply, "[i]f the

court must examine the merits of the underlying dispute, delve into the statute and regulations, or make independent judgments as to plaintiffs' eligibility under a statute, the claim is not collateral." *Id.* at 503 (citation omitted). Applying these maxims, the court concluded that Family Rehab's procedural due process and *ultra vires* claims were collateral, explaining that "[l]ike the plaintiffs in *Eldridge*, Family Rehab s[ought] only a hearing before the recoupment of its Medicare revenues." *Id.* Family Rehab's procedural due process claim did not require the reviewing court to address the Medicare Act or regulations or the merits of the recoupment action. *Id.* Hence, the court found the only issue was the amount of due process required under the Constitution and federal law before recoupment, rendering the issue entirely collateral. *Id.*

### C. Discussion

This Court concurs with the reasoning of the Fifth and Eight Circuits and specifically the reasoning of the Fifth Circuit in *Family Rehab.*, *supra*, and finds that a procedural due process challenge directed to the extraordinary delay in receiving a hearing before an ALJ and final review before the appeals board is entirely collateral and therefore not precluded by § 405(h). Alpha Home Health Solutions does not ask this Court to decide whether the alleged overpayments have been properly calculated. Rather, Alpha asks this court to maintain the status quo until complete administrative review is possible, because to do otherwise—that is, to do nothing—offends procedural due process. Nothing in § 405 (g) and (h) preclude this Court from exercising jurisdiction over this collateral claim.

The Court agrees with the Supreme Court's admonition in *Salfi* that "a statute precluding all review of constitutional claims would raise a serious constitutional question

13

of the validity of the statute." *Salfi*, 442 U.S. at 764. Moreover, the Eleventh Circuit's pronouncement in *Heckler* does not preclude the conclusion reached here. While the Eleventh Circuit construed a narrow exception to jurisdiction absent complete exhaustion, the issue before the Court was limited to the All Writs Act, and, unlike the instant case, V.N.A.'s claims were "are at the heart of the section 405(h) preclusion" in that they "directly s[ought] 'realization of provider-cost reimbursement under the Medicare Act." *Heckler*, 711 F.2d at 1027. The instant constitutional challenge is closer to *Eldridge* in that procedural due process, in the form of a hearing prior to a property deprivation, is before the Court as opposed to the ultimate merits of entitlement to continued payment. And as in *Eldridge*, even if Alpha's constitutional challenge was not entirely collateral and exhaustion was required, the relief that is sought is beyond the Secretary's power to confer. That is, the Secretary is powerless to compel ALJs to hear cases and render decisions more quickly such that requiring waiver by the Secretary is inappropriate.

Having concluded that the Court has jurisdiction to hear Plaintiff's constitutional challenge, the Court must now determine whether Alpha has a property interest protected by the Fifth Amendment.[12]

## IV. Constitutionally-Protected Property Interest

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Eldridge*, 424 U.S. at 332. In *Eldridge* the Supreme Court found that "the interest of an individual in continued receipt of [Social

---

[12] The Government in their brief in opposition does not challenge whether Alpha has a constitutionally-protected property interest; however, the issue was raised during oral argument.

14

Security disability] benefits is a statutorily-created 'property' interest protected by the Fifth Amendment. *Id.*

This Court is unaware of binding Eleventh Circuit precedent on the issue of whether a healthcare provider has a constitutionally-protected property interest in Medicare payments that may be subject to a recoupment action. It is well-established, however, that to have a protectable property interest in a benefit, such as a Medicare payment, a person or entity must have "a legitimate claim of entitlement to it." *PHHC, LLC v. Azar*, No. 1:18CV1824, 2018 WL 5754393 (N.D. Ohio Nov. 2, 2018) (quoting *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "Entitlements are created by 'rules or understandings' from independent sources, such as statutes, regulations, and ordinances, or express or implied contracts." *Id.*

The district court in *PHHC* conducted an exhaustive analysis of Supreme Court and Circuit opinions discussing when an individual or entity has a legitimate claim of entitlement to property. In *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40 (1999), the Supreme Court concluded that an individual does not have a property interest in the continued payment of workers' compensation benefits and that such benefits may be suspended without notice or an opportunity to be heard. *PHHC*, 2018 WL 5754393, at *8. The Supreme Court reasoned that because workers' compensation benefits are payable upon the presentation of proof that the medical treatment is "reasonable and necessary," no property interest in the payments attached until this threshold was met. *Id.*

Similarly, in *Parrino v. Price*, 869 F.3d 392, 397–98 (6th Cir. 2017), the Sixth Circuit held that the plaintiff, a pharmacist, did not have a protectable property interest in

15

continued participation in federal health care programs. The plaintiff had been excluded from federal health care programs for five years, and the district judge found the exclusion did not implicate a property interest "because 'health care providers are not the intended beneficiaries of the federal health care programs.'" *Id.* at 396. *See Erickson v. U.S. ex rel. Dep't of Health and Human Servs.*, 67 F.3d 858, 862 (9th Cir. 1995); *Koerpel v. Heckler*, 797 F.2d 858, 863–65 (10th Cir. 1986); *Cervoni v. Sec'y of Health, Ed. & Welfare*, 581 F.2d 1010, 1018–19 (1st Cir. 1978). These courts reason that health care providers are not the intended beneficiaries of the federal programs and do not have a property interest in continued participation or reimbursement. *Parrino*, 869 F.3d at 398.

In contrast, the Fourth Circuit in *Ram v. Heckler*, 792 F.2d 444, 447 (4th Cir. 1986), held that providers have property interests in continued participation in the federal health care programs, but the finding is not supported by substantial analysis. Similarly, the Fifth Circuit in *Family Rehab*, *supra*, reversed the district court and found jurisdiction over collateral constitutional challenges to the Medicare Act. The Fifth Circuit did not address whether the provider had a property interest in the money being recouped by Medicare, and remanded the case for further consideration by the trial court. *Family Rehab*, 886 F.3d at 507. On remand, the trial court found that Family Rehab had a property interest in Medicare payments for services rendered. *Family Rehab v. Azar*, 2018 WL 3155911, at *4 (N.D. Tx. June 28, 2018). The trial court distinguished *Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354, 365 (6th Cir. 2000), which held that a nursing facility did not have a property interest in continuing to be a Medicare provider because the program is intended to benefit patients, concluding that Family Rehab has a property interest in receiving payments "owed to it for services rendered." *Id.*

A.  Discussion

As noted above, entitlement to property is created by rules, or understandings from sources such as statutes, regulations, and ordinances, or express or implied contracts. *PHHC*, 2018 WL 5754393, at *7. The court in *PHHC* analyzed 42 U.S.C. § 1395g(a), the statute conferring upon the Secretary the authority to determine the amount of payment and authority to recoup overpayments. *Id.* at *8. The statute provides for limited or conditional entitlement to payments:

> The Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time or times as the Secretary believes appropriate (but not less often than monthly) and prior to audit or settlement by the Government Accountability Office, from the Federal Hospital Insurance Trust Fund, the amounts so determined, with necessary adjustments on account of previously made overpayments or underpayments; except that no such payments shall be made to any provider unless it has furnished such information as the Secretary may request in order to determine the amount due such provider under this part for the period with respect to which the amounts are being paid or any prior period.

*Id.* (quoting 42 U.S.C. § 1395g(a)). The statute defines the entitlement to payment; that is, the property interest, and here the statute clearly states that payments shall be made "with necessary adjustments on account of previously made overpayments." Thus, the health care provider understands that payments are made "prior to audit," meaning a subsequent audit may result in recoupment by the Secretary. The district court in *PHHC* concluded that because the statutes provides for adjustments for overpayments, the plaintiff's interest in the overpayments does not rise to the level of a constitutionally-protected property interest. *PHHC*, 2018 WL 5754393, at *8. This Court agrees that the

17

contingent nature of the payment system makes clear that a health care provider lacks a constitutionally protected interest in an overpayment of federal funds.[13]

## V. Preliminary Injunction

The grant or denial of a preliminary injunction rests in the discretion of the district court. *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). The district court, however, does not have unbridled discretion and must exercise that discretion in light of the "four prerequisites for the extraordinary relief of preliminary injunction." *Id.* (internal quotation marks omitted). The parties agree that the four prerequisites which Plaintiff must establish are: (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of an injunction; (3) that the harm suffered by Plaintiff in the absence of an injunction would exceed the harm suffered by Defendants if the injunction issued; and (4) that an injunction would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002); *Miccosukee Tribe of Indians of Fla. v. United States*, 571 F. Supp. 2d 1280, 1283 (S.D. Fla. 2008). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (emphasis added)).

---

[13] While the absence of a constitutionally-protected interest in continued receipt of disability benefits (as in *Eldridge*) and in continued participation in federal health care programs (as in *Cathedral Rock* and *Ram*) may be distinguished as dealing with a property interest in future payments as opposed to past payments, the distinction is not dispositive. Entitlement is determined by the statute, and § 1395g(a) creates at best a contingent interest in past payments which logically is no greater than the right to possible future payments.

18

As discussed in Part IV, *supra*, Alpha does not possess a constitutionally-protected property interest in federal health care payments that are subject to an audit and recoupment. Absent a constitutionally-protected property interest, Alpha cannot meet its burden of establishing that it is substantially likely to succeed on the merits of its due process challenge. While this Court need not touch upon the other prongs of the preliminary injunction test, the Court observes that Alpha cannot establish that it is irreparably injured by the recoupment process. "Mere loss of income . . . does not establish irreparable injury . . ." *V.N.A.*, 711 F.3d at 1030. "Having chosen to operate within the system on a cash-poor basis, [health care providers] take a knowing risk that an intermediary's determination might delay payment." *Id.* at 1034. The fact that thirty patients may face interruption in the continuity of care, while disturbing, is not dispositive. Plaintiff failed to present proof that another qualified home health care provider cannot fill the void created by Plaintiff's down-sizing caused by the recoupment process.[14]

## VI. CONCLUSION

Alpha's due process challenge is entirely collateral to the resolution of the overpayment dispute which lies at the heart of this dispute, and § 405(g) and (h) do not preclude jurisdiction by this Court. For Alpha to demonstrate a substantial likelihood of success on appeal, however, they must first possess a constitutionally-protected property interest in the federal health care payments subject to recoupment. Having found against

---

[14] The Government provided the Court with a list of home health providers operating in the same geographic area as Plaintiff. (Doc. 21-2).

Alpha on this critical issue, it is **ORDERED AND ADJUDGED** that the Motion for Preliminary Injunction (Doc. 12) is **DENIED**.[15]

**DONE AND ORDERED** in Orlando, Florida on November 27, 2018.

_[signature]_
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[15] The backlog of cases before the Administrative Law Judges is unacceptable; yet, health care providers may accelerate review on the merits in federal court on an abbreviated evidentiary record. While this alternative to full administrative review is not desirable, the statutory scheme in place does not guarantee an absolute right to a hearing before an ALJ. It provides "a comprehensive administrative process—which includes deadlines and consequences for missed deadlines . . . Indeed . . . a healthcare provider can bypass administrative reviews if such reviews are delayed . . ." *PHHC*, 2018 WL 5754393, at 10 (quoting *Cumberland Cty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 50 (4th Cir. 2016)).